```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
JOHN K. LEPPERT, individually and as
guardian of Alyssa V. Leppert, an
incapacitated person,,

                    Plaintiff,                    MEMORANDUM AND ORDER
                                                    2:16-cv-3723 (DRH)(AYS)

        - against –

THE COUNTY OF SUFFOLK, THE
SUFFOLK COUNTY POLICE
DEPARTMENT, EDWARD WEBBER,
TIMOTHY D. SINI, JOHN & JANE DOES
1–10, names being fictitious and presently
unknown to Plaintiff and being intended to be
Police Officers, supervisory personnel, and/or
other employees of Defendants Suffolk County
and/or the Suffolk County Police Department,
THOMAS J. SPOTA, as District Attorney of
Suffolk County, and JOHN AND JANE DOES
11–20, names being fictitious and presently
unknown to Plaintiff and being intended to be
Assistant District Attorneys, supervisory
personnel and/or other employees of
Defendants County of Suffolk, and/or the
District Attorney of Suffolk County,

                    Defendants.
---------------------------------------------------------X
```

**APPEARANCES**

**MORICI & MORICI, LLP**
Attorneys for Plaintiff
1399 Franklin Ave., Suite 202
Garden City, NY 11530
By:   Paul R. Pepper, Esq.
      Robert Morici, Esq.

**SUFFOLK COUNTY ATTORNEY'S OFFICE**
Attorneys for Defendants
100 Veterans Memorial Highway
P.O. Box 6100
Hauppauge, NY 11788
By: Brian C. Mitchell, Esq.
 Megan E. O'Donnell, Esq.
 Susan A. Flynn, Esq.

**HURLEY, Senior District Judge:**

## INTRODUCTION

Plaintiff John Leppert ("Plaintiff") brought the instant action on behalf of himself and as guardian of his incapacitated daughter, Alyssa Lepert, against Defendants Suffolk County ("County"), the Suffolk County Police Department ("SCPD"), former SCPD Commissioner Edward Webber ("Webber"), former SCPD Commissioner Timothy D. Sini ("Sini"), John & Jane Does 1–10, names being fictitious and presently unknown to Plaintiff and being intended to be Police Officers, supervisory personnel, and/or other employees of Suffolk County and/or the SCPD (together with all other Officers, the "Individual Defendants"), former SC District Attorney ("DA") Thomas J. Spota ("Spota"), as County DA, and John and Jane Does 11–20, names being fictitious and presently unknown to Plaintiff and being intended to be Assistant District Attorneys, supervisory personnel and/or other Employees of Suffolk County, and/or the District Attorney of Suffolk County (collectively with all defendants, "Defendants"). Plaintiff alleges violations of the First, Fourth, and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1983, 1988, and New York State law.

Presently before the Court is Defendants' motion to dismiss pursuant to Fed. R. Civ. P. ("Rule") 12(b)(6) for failure to state a claim. For the reasons discussed below, the motion to dismiss is granted as to all claims.

## BACKGROUND

The following relevant facts come from the Amended Complaint ("Am. Compl.") and are assumed true for purposes of the motions to dismiss.

On April 4, 2015, at approximately 4:40 p.m., Alyssa Lepert was operating a motor vehicle near Kurt Lane in Hauppauge, New York. (Am. Compl. ¶ 3.) A County police officer attempted to stop Ms. Leppert for a routine traffic infraction, at which time Ms. Leppert attempted to flee. (*Id.*) The police engaged in a high-speed pursuit of Ms. Leppert that lasted over three miles, "and ended when Ms. Leppert allegedly 'lost control' of her vehicle and crashed into a telephone pole and tree on Route 111, approximately 60 feet south of the intersection with Route 347 in Hauppauge, New York." (*Id.*) Ms. Leppert was thereafter airlifted to Stony Brook Hospital. (*Id.* ¶ 5.) Two police officers later came to Plaintiff's home to inform him that his daughter had been in an accident, and asked him to go to Stony Brook Hospital to identify her body. (*Id.* ¶ 6.) At some time, the Police Officers made unidentified false statements[1] and "deliberately misled [Plaintiff] into believing that Alyssa Leppert was deceased, when in fact those defendants knew or should have known she was alive." (*Id.* ¶ 50.) The Police Officers did not provide Plaintiff with any further information regarding the accident or the events that lead up to it, and to this date Defendants "have refused to provide any details with regard to the specifics of the subject incident." (*Id.*)

Ms. Leppert underwent numerous surgeries and was ultimately diagnosed with a traumatic brain injury. (*Id.* ¶ 7.) She remains in a minimally responsive state, unable to speak or "perform the most basic of tasks on her own." (*Id.*) On May 28, 2015, Plaintiff filed a Notice of

---

[1] The only statement in the Amended Complaint that could be construed as "false" is that Plaintiff was asked to identify Ms. Leppert's body, when in fact she was still alive. (*See* Am. Compl. ¶ 6.) There are no other false statements in the Amended Complaint.

Claim ("Notice of Claim") with the County "for personal injuries, mental anguish, pain and suffering and medical expenses sustained by Alyssa Leppert, and John Leppert's loss of his parental interest in the custody, society, companionship, and affection of his daughter, due to the gross negligence of Suffolk County Police Officers[.]" (*Id.* ¶ 8.) The Notice of Claim alleged that the SCPD failed to properly train, supervise, and oversee its officers with regards to pursuits and the pursuit of Ms. Leppert. (*Id.* ¶ 9.) On September 22, 2015, the Judge Patrick J. Leis, III, of the Suffolk County Supreme Court declared Ms. Leppert an Incapacitated Person and appointed Plaintiff her Personal Needs and Property Guardian. (*Id.* ¶ 10.)

On April 22, 2016, the Suffolk County DA charged Ms. Leppert with 9 counts, including reckless endangerment, driving while impaired, reckless driving, unlawful fleeing, driving without a valid driver's license, failure to maintain lane, failing to stop at a traffic control device, and operating a motor vehicle without brake lights. (*Id.* ¶ 13.) Due to Ms. Leppert's medical state, she was unable to be arraigned, and no discovery was taken. (*Id.* ¶ 14.) Moreover, Plaintiff maintains that Defendants have denied all of his requests for police reports, notes, accident scene reports, protocol reports, and any other information concerning the pursuit. (*Id.* ¶ 15.) Plaintiff alleges that "after the pursuit and motor vehicle accident, a conspiracy to cover up the facts of the occurrence began[,]" including a false account of the pursuit and collision that was spread from the SCPD and DA "to other County agencies and to the press in an attempt to blame and stigmatize the victim." (*Id.* ¶ 16.)

Plaintiff brought the instant action on July 5, 2016. The case was reassigned to the undersigned on April 6, 2018.

## DISCUSSION

### I.  *Legal Standard*

In deciding a motion to dismiss under Rule 12(b)(6), a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted).  The plausibility standard is guided by two principles.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *accord Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009).

First, the principle that a court must accept all allegations as true is inapplicable to legal conclusions.  Thus, "threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.  A plaintiff must provide facts sufficient to allow each named defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery.  *See Twombly*, 550 U.S. at 555.

Second, only complaints that state a "plausible claim for relief" can survive a motion to dismiss.  *Iqbal,* 556 U.S. at 679.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that defendant acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line' between possibility and plausibility of 'entitlement to relief.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at

556-57) (internal citations omitted); *see In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007). Determining whether a complaint plausibly states a claim for relief is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *accord Harris*, 572 F.3d at 72.

II. The Parties' Arguments

The Amended Complaint sets forth eight causes of action, as follows: (1) violations of 42 U.S.C. § 1983 against the Individual Defendants; (2) violations of § 1983 for failure to supervise and train against Webber and any other supervisory personnel; (3) a Monell claim against the County; (4) negligent infliction of emotional distress against the Individual Defendants; (5) intentional infliction of emotional distress against the Individual Defendants; (6) "chilling of the right of petition [] under the First Amendment[;]" (7) negligence against the County and the SCPD for engaging in the pursuit over a minor traffic violation; and (8) Respondeat Superior against the County.

Defendants set forth nine arguments in support of their motion to dismiss: (1) Plaintiff's claims against the individual defendants in their official capacities must be dismissed as duplicative; (2) the Amended Complaint fails to set forth a deprivation of First Amendment rights by the DA; (3) Spota is protected from liability by prosecutorial immunity; (4) Spota is immune from liability as a supervisor and administrator; (5) the § 1983 claims for failure to train against Webber and Sini must be dismissed because there are no allegations of personal responsibility; (6) the § 1983 claims against the County must be dismissed because there are no allegations of a municipal policy or custom; (7) the SCPD Officers are protected from suit by qualified immunity; (8) the state law claims against the individual defendants should be dismissed because New York County Law does not provide for vicarious liability; and (9) the

Court should decline supplemental jurisdiction over the remaining state law claims. (Defs.' Mem. in Supp. [ECF No. 30-3] at 4–25.)

Plaintiff's Memorandum in Opposition does not directly respond to any of Defendants' arguments. Rather, the Memorandum devotes slightly less than two pages to the "Argument" section, simply stating that Spota's actions were administrative rather than prosecutorial and therefore not protected by "absolute immunity," supplemented by the comment that there are outstanding factual questions that cannot be resolved without discovery so the motion to dismiss should be denied on that basis as well. (Pl.'s Mem. in Opp. [ECF No. 30-4] at 8–10.) The Court is unclear as to whether Plaintiff does not respond to Defendants' other arguments because he concluded that his claims lack merit. While "[P]laintiff's failure to respond to contentions raised in a motion to dismiss claims constitutes an abandonment of those claims" the Court will briefly touch on each of Defendants' nine arguments as they apply to Plaintiff's eight claims, rather than dismissing the matter for this reason alone. *Beider v. Retrival Masters Creditors Bureau, Inc.*, 146 F. Supp. 3d 465, 470 (E.D.N.Y. 2015) (quoting *Youmans v. Schriro*, 2013 WL 6284422, at *5 (S.D.N.Y. Dec. 3, 2013)) and cases cited therein.

III.   *The Motion to Dismiss is Granted as to All Claims*

   1. The Motion to Dismiss is Granted as to Count One: Violations of § 1983 Against the Individual Defendants

Count One of the Complaint asserts violations of Ms. Leppert's rights under the Fourth and Fourteenth Amendments against the "Individual Defendants," which the Complaint defines as Webber, Sini, and the SCPD. (Am. Compl. ¶¶ 35, 37). Specifically, Plaintiff alleges that the Individual Defendants deprived Ms. Leppert of "the rights to be free from (a) the intentional use of unreasonable force; (b) unnecessary and wanton infliction of pain; (c) the prevention and denial of critical medical attention; and (d) the deprivation of life and liberty without due process

of law." (*Id.* ¶ 37.) Defendants argue that the SCPD Officers are entitled to qualified immunity on all counts.

It is well-established that "[t]he doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

As a preliminary matter, the Supreme Court has previously considered whether a police pursuit that ended in the motorists death constitutes a seizure under the Fourth Amendment and concluded that "[t]he Fourth Amendment covers only 'searches and seizures,' neither of which took place here." *Count. of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998) (citing *California v. Hodari D.*, 499 U.S. 621, 626 (1991) (holding that a police pursuit in attempting to seize a person does not amount to a "seizure" under the Fourth Amendment)); *see also Robinson v. Velasquez*, 2010 WL 1010733, at *7 (E.D.N.Y. March 15, 2010) (quoting the same). Here, there are no allegations of a search and the police pursuit does not qualify as a seizure. Therefore, the motion to dismiss is granted as to Plaintiff's Fourth Amendment claim against all Defendants in Count One.

As to Plaintiff's Fourteenth Amendment claim, the Supreme Court has held that "highspeed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressible by an action under § 1983." *Lewis*, 523 U.S. at 854; *see also Robinson*, 2010 WL 1010733, at *7 (quoting the same). The Supreme Court explained that only a purpose to cause harm "unrelated to the legitimate object of arrest" will shock the conscience and give rise to a Fourteenth Amendment

claim for a high-speed pursuit. *Id.* There are no allegations in the Amended Complaint that the SCPD Officers had a purpose to cause harm unrelated to the legitimate object of an arrest. In fact, Plaintiff concedes that Defendants had cause to pull Ms. Leppert over due to a traffic infraction. (*See* Am. Compl. ¶ 3.) Accordingly, all of Plaintiff's Fourteenth Amendment claims related to the pursuit —namely the claims for unreasonable force[2] and unnecessary and wanton infliction of pain—are dismissed. This leaves only Plaintiff's claim that the Individual Defendants denied and prevented the administration of critical medical attention.

There are no facts in the Amended Complaint that Ms. Leppert was denied medical attention. Rather, the Amended Complaint states that at some point after the pursuit, "Ms. Leppert was air lifted to Stony Brook Hospital, where she was treated through multiple surgeries for a variety of broken bones and internal trauma." (*Id.* ¶ 5.) Accordingly, Plaintiff's final claim under Count One is dismissed as to all Defendants.[3]

---

[2] The Court notes that there were no allegations in the Amended Complaint of unreasonable force so this claim would have otherwise been dismissed on that ground.

[3] The Court Notes that Defendants also aver that the claims against the Individual Defendants sued in their official capacities are duplicative and should be dismissed as such. "[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Daytree at Cortland Square, Inc. v. Walsh*, 332 F. Supp. 3d 610, 639 (E.D.N.Y. 2018) (quoting *Castanza v. Town of Brookhaven*, 700 F. Supp. 2d 277, 283–84 (E.D.N.Y. 2010) (quoting *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 n.55 (1978))); *Jackler v. Byrne*, 658 F.3d 225, 244 (2d Cir. 2011) (nothing that "a claim asserted against a government official in his official capacity is essentially a claim against the governmental entity itself"). "[W]here a plaintiff brings claims against both a municipality and individuals in their official capacities as agents of that municipality, 'courts have routinely dismissed corresponding claims against individuals named in their official capacity as redundant and an inefficient use of judicial resources.'" *Daytree*, 332 F. Supp. 3d at 639–40 (quoting *Castanza*, 700 F. Supp. 2d at 284 (quoting *Escobar v. City of New York*, 2007 WL 1827414, at *3 (E.D.N.Y. June 25, 2007)). Dismissal of redundant claims against individual defendants in their official capacity is contingent upon the claims against the municipality surviving the motion to dismiss. *See id.* As all the claims in this action are dismissed, this doctrine does not apply.

2. The Motion to Dismiss is Granted as to Count Two: Violations of § 1983 for Supervisory Liability/Failure to Train

Count Two of the Amended Complaint sets forth a claim under § 1983 against Defendants Webber and Sini for failure to train, and reckless disregard and deliberate indifference in supervising their subordinates. The Second Circuit has established that "a § 1983 action depends on a showing of some personal responsibility, and cannot rest on *respondeat superior*." *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citing *Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1060, 1065 (2d Cir. 1989)). A supervisor may be shown to be liable in the following ways:

> (1) actual direct participation in the constitutional violation[;] (2) failure to remedy a wrong after being informed through a report or appeal[;] (3) creation of a policy or custom that *sanctioned* conduct amounting to a constitutional violation or allowing such a policy or custom to continue; (4) grossly negligent supervision of subordinates who committed a violation; or (5) failure to act on information indicating that unconstitutional acts were occurring.

*Id.* at 145 (emphasis added); *see also Brown v. Montone*, 2018 WL 2976023, at *3 (S.D.N.Y. June 13, 2018) (quoting the same). Therefore, Plaintiff must plausibly allege conduct by Webber and Sini that falls into one of the five identified categories.

The only reference to any action by either of these Defendants in the Amended Complaint is the allegation that Defendant "Webber negligently failed to adopt a restrictive pursuit policy, resulting in . . . injuries" to Ms. Leppert. (Am. Compl. ¶ 9.) The only mention of Defendant Sini is that he was appointed Acting Police Commissioner in February 2016. (*See id.* ¶ 11.) As there are no allegations whatsoever as to Defendant Sini's actions or failure to act, the motion to dismiss Count Two as it is brought against Defendant Sini is granted.

As to Defendant Webber, the Amended Complaint does not include any facts that can be construed to allege that Defendant Webber was directly involved, that he failed to right a wrong,

that he was grossly negligent in supervising his subordinates, or that he failed to act on information indicating that unconstitutional acts were occurring. Hence, four of the five identified categories for showing supervisor liability are clearly inapplicable. The final category requires "creation of a policy or custom that sanctioned conduct amounting to a constitutional violation or allowing such a policy or custom to continue." *Hernandez*, 341 F.3d at 144. This is inapplicable because the single allegation against Defendant Webber—that he *failed* to institute a restrictive pursuit policy—is not equivalent to *creating* a policy that sanctions conduct amounting to a constitutional violation.[4] Accordingly, the motion to dismiss Count Two as it is brought against Defendant Webber is granted.

Finally, it is somewhat ambiguous in the Amended Complaint whether Plaintiff has asserted Count Two against Defendant Spota. In an abundance of caution, Defendants argue in their motion to dismiss that prosecutorial immunity extends to Spota as a supervisor, assuming arguendo that Plaintiff has brought such a claim against him. Plaintiff's response is that Defendant Spota's actions were administrative and fell outside the protections of prosecutorial immunity. (Mem. in Opp. at 8.) The Supreme Court held in *Van de Kamp v. Goldstein* that even when training and supervision may have been administrative in nature, when that "kind of administrative obligation . . . is directly connected with the conduct of a trial" then the prosecutors involved in such supervision or training "enjoy absolute immunity[.]" 555 U.S. 335, 344 (2009). Here, all the conduct in question is directly related to the grand jury indictment against Ms. Leppert. As such, the motion to dismiss is granted as to Count Two as it may have been brought against Defendant Spota.

---

[4] Even if, arguendo, these five categories should be expanded to include the failure to institute a policy—which has not been advanced by Plaintiff—there is nothing in the Amended Complaint to suggest that Defendants Webber or Sini knew or had any reason to know that police pursuits lead to unconstitutional conduct. As such, they cannot be held liable as supervisors.

3. The Motion to Dismiss is Granted as to Count Three: "*Monell* Liability – Against the County"

Count Three of the Amended Complaint sets forth a claim for *Monell* liability against the County for developing and maintain a "custom, policy, and/or practice" to: (1) "engage in reckless, unnecessary, and unsupervised pursuits[;]" (2) "conduct inadequate screening in the hiring and retention of police officers[;]" and (3) "fail to adequately train, supervise, and discipline police officers such that the public would not be placed in unreasonable risk of being the victims of deadly and dangerous pursuits by the police." (Am. Compl. ¶¶ 44, 46– 47.)

In order to bring a § 1983 claim against a municipal defendant, a plaintiff must establish both a violation of his constitutional rights and that the violation was motivated by a municipal custom or policy. *See Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978); *see also Coon v. Town of Springfield, Vt.*, 404 F.3d 683, 686 (2d Cir. 2005) ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."); *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004); *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) (noting that "the mere invocation of the 'pattern' or 'plan' will not suffice") (citations omitted); *Middleton v. City of New York,* 2006 U.S. Dist. Lexis 44320 (E.D.N.Y. 2006) (allegations of an isolated incident of police misconduct will not suffice). A municipality cannot be held liable under § 1983 on a respondeat superior theory. *Monell*, 436 U.S. at 691.

"To show a policy, custom, or practice, a plaintiff need not identify an express rule or regulation." *Patterson*, 375 F.3d at 226. "Rather, the existence of a municipal policy or custom may be plead in four ways. A plaintiff may allege "(1) the existence of a formal policy which is

officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of policymaking officials; or (4) a failure by policy makers to properly train or supervise their subordinates, amounting to deliberate indifference to the rights of those who come in contact with municipal employees." *Calicchio v. Sachem Central Sch. Dist.*, 2015 WL 5944269, *10 (E.D.N.Y. Oct. 13, 2015) (citing *Giscombe v. New York City Dept. of Educ.*, 2013 WL 829127, * 7 (S.D.N.Y. Feb. 28, 2013); accord *Bektic-Marrero v. Goldberg*, 850 F. Supp. 2d 418, 430 (S.D.N.Y. 2012)); *Zambrano–Lamhaouhi v. New York City Bd. of Educ.*, 866 F. Supp. 2d 147, 175 (E.D.N.Y. 2011).

Here, the Amended Complaint does not set forth any allegations that plausibly suggest *Monell* liability based on the existence of a formal policy or widespread practice. *See, e.g.*, *Vail v. City of New York*, 68 F. Supp. 3d 412, 431 (S.D.N.Y. 2014) ("A municipal policy may be pronounced or tacit and reflected in either action or inaction, but either way Plaintiff must allege it with factual specificity, rather than by bare and conclusory statements.") The Second Circuit has recently explained that a plaintiff cannot allege a de facto policy, when "apart from a detailed recounting of his own experiences, [the plaintiff's] complaint contains only general conclusory allegations that there was a policy . . . ." *Schnauder v. Gibens*, 679 Fed. App'x 8, 10 (2d Cir. 2017). In the case at bar, Plaintiff provides a detailed recounting of Ms. Leppert's experience being pursued by the police, but contains only general and conclusory allegations that there was a policy to "engage in reckless, unnecessary, and unsupervised pursuits" and a failure to adequately train, supervise, and discipline police officers with regards to pursuits. (*See* Am. Compl. ¶ 44.) Plaintiff does not provide a single example of another police pursuit that the

SCPD engaged in, let alone one that was reckless. The same is true of Plaintiff's claim that there was a policy or practice of conducting inadequate hiring screenings. This is "insufficient to sustain or 'raise a reasonable expectation that discovery will reveal evidence' in support of his claim." *Schnauder*, 679 Fed. App'x at 10 (quoting *Twombly*, 550 U.S. at 556)). Accordingly, the Court need not analyze whether Plaintiff's constitutional rights were violated as the question is academic. The motion to dismiss is granted as to Count Three.

4. The Motion to Dismiss is Granted as to the Final Federal Claim, Count Six: "Chilling of the Right of Petition . . . Under the First Amendment"

Count Six of the Amended Complaint sets forth the final Federal Claim, which is brought against unspecified "defendants" for "chilling of the right of petition . . . under the First Amendment of the U.S. Constitution." (Am. Compl. ¶ 59.) While the language in the Amended Complaint is vague and difficult to follow, it seems that Plaintiff seeks to make out a First Amendment retaliation claim against Defendant Spota and the John and Jane Doe subordinate prosecutors. (*Id.*)

To prevail on a First Amendment retaliation claim, a plaintiff must prove "(1) [his or her] speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against [him or her]; and (3) there was a causal connection between this adverse action and the protected speech." *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 272 (2d Cir. 2011). The Supreme Court has held that "a plaintiff cannot state a claim of retaliatory prosecution in violation of the First Amendment if the charges were supported by probable cause." *Reichle v. Howards*, 566 U.S. 658, 667 (2012) (citing *Hartman v. Moore*, 547 U.S. 250 (2006)).

Here, Plaintiff alleges the first element of a retaliation claim by asserting that he engaged in protected speech when he filed the Notice of Claim and challenged the SCPD's policies and

practices. (Am. Compl. ¶ 8.) Defendants do not dispute this. Plaintiff attempts to allege the second element of a retaliation claim because he claims that the Defendants took an adverse action against him by initiating the retaliatory prosecution that culminated in a grand jury indictment against Ms. Leppert. (*Id.* ¶ 58.)

An action for retaliatory prosecution, however, cannot be brought against the prosecutor, because he or she is "is absolutely immune from liability for the decision to prosecute[.]'" *Lozman.*, 138 S. Ct. at 1953–54 (2018) (quoting *Hartman*, 547 U.S. at 261.)) This alone is a sufficient basis to dismiss Count Six. To the extent that Plaintiff seeks to inartfully assert Count Six against any other party, the Court notes that the Amended Complaint does not include any allegations that Defendants lacked probable cause to bring the charges against Ms. Leppert. (*See* Am. Compl. ¶¶ 13–14.) Accordingly, Plaintiff has failed to make out the second element of a First Amendment Retaliation claim. As the elements of a First Amendment claim are conjunctive, the Court need not analyze whether Plaintiff has made out the third element. Therefore, the motion to dismiss is granted as to Count Six as it is brought against any and all Defendants.

     5. Prosecutorial Immunity for Spota

As noted above, Plaintiff contends that Defendant Spota's actions "were not prosecutorial in nature, but rather administrative and therefore there is no basis for absolute immunity." (Mem. in Opp. at 8.) The Amended Complaint does not appear to set forth a retaliatory prosecution claim against Defendant Spota besides the First Amendment claim, nor does the Amended Complaint specify any other claims brought against Spota. However, in light of the fact that this is the sole argument Plaintiff advances in his Memorandum in Opposition, the Court will take a moment to specifically address it.

An action for retaliatory prosecution cannot be brought against a prosecutor, because he or she is "is absolutely immune from liability for the decision to prosecute . . . the plaintiff must [instead] sue some other government official and prove that the official 'induced the prosecutor to bring charges that would not have been initiated without his urging.'" *Lozman*, 138 S. Ct. at 1953–54 (2018) (quoting *Hartman*, 547 U.S. at 261)). In the case that Plaintiff cites, the Supreme Court explains that "administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to the protections of absolute immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). However, "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." *Id.* Plaintiff's argument is unavailing as it is well-established that the decision to bring an indictment or to commence a prosecution is protected by prosecutorial immunity. *Coleman v. City of New York*, 2009 WL 909742, at *2 (E.D.N.Y. April 1, 2009) (quoting *Buckley*, 509 U.S. at 275 n. 5). There are no allegations in either the Amended Complaint or Plaintiff's Memorandum in Opposition that Defendant Spota or any of the subordinate prosecutors did anything other than present the matter to the grand jury. Therefore, Defendant Spota and the subordinate prosecutors John and Jane Does #11–20 are protected by prosecutorial immunity.

6. The Motion to Dismiss is Granted as to Counts Four, Five, Seven, and Eight: The State Law Claims

Having dismissed Plaintiff's four Federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining four state law claims as there is no basis for doing so in this case. "[I]f federal law claims are dismissed before trial . . . the state law claims should be dismissed as well" unless federal policy concerns "argue in favor of exercising

supplemental jurisdiction even after all original-jurisdiction claims have been dismissed." *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966)). Here, the crux of this matter concerns issues of New York State law. There are no commingled questions of federal law or overriding federal policy concerns that remain. Moreover, Plaintiff completely abandoned his state law claims in his Memorandum in Opposition and gave the Court no justification for exercising supplemental jurisdiction. Accordingly, the motion to dismiss is granted as to all state law claims.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss pursuant Rule 12(b)(6) for failure to state a claim is granted as to all claims and the case is dismissed. The Clerk of Court is directed to enter judgment and close the case.

**SO ORDERED.**
Dated: Central Islip, New York
　　　　March 5, 2019

　　　　　　　　　　　　　　　　　　　　　　　　　　　／s／
　　　　　　　　　　　　　　　　　　　　　　　　Denis R. Hurley
　　　　　　　　　　　　　　　　　　　　　　　　Unites States District Judge